UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BERNARD CAMPBELL,

    Plaintiff,

v.                                      Case No.: 8:11-cv-0377-T35-TBM

ERIC K. SHINSEKI,
Secretary of Department of Veterans
Administration

    Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant's Motion for Summary Judgment (Dkt. 28) and Plaintiff's Response in Opposition thereto. (Dkt. 29.) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **DENIES** Defendant's Motion for Summary Judgment (Dkt. 28), as described herein.

    **I.**    **BACKGROUND**

On October 13, 2009, Plaintiff, an African American male, was hired as a Chaplain Resident and Clinical Pastoral Education ("CPE") student at the James A. Haley Veterans Administration Hospital ("VA Hospital") in Tampa, Florida. (Dkt. 1 at ¶ 2.) The position was for a one year term; however, the VA Hospital terminated Plaintiff's employment on November 25, 2009. (Id. at ¶ 3.) Plaintiff identified his religion as Protestant. (Id. at ¶ 1.) Brenda Wallace ("Wallace"), an African American female, was Plaintiff's educational supervisor in the CPE program. (Id at ¶ 5.) James Taylor ("Taylor"), a Caucasian male, was the Chief Chaplin and CPE Director.

(Id at ¶ 7.)  Along with Plaintiff, there were three other CPE student chaplains in the CPE program.  (Id. at ¶ 1.)  The other student chaplains were Loreen O'Brien ("O'Brien"), Karen Morris ("Morris"), and Carey Young ("Young").  O'Brien, Morris, and Young are all Caucasian females.  (Id.)

According to Plaintiff, from the inception of his employment, he and Wallace had a theological conflict; he held traditional conservative views while Wallace was a "liberal womanist theologian."  (Dkt. 29, p. 6.)  Plaintiff claims O'Brien, Young, and Morris held the same "liberal and feminist" beliefs as Wallace.  (Id., p. 8.)  Plaintiff claims Wallace continuously harassed him due to his conservative religious beliefs, his race, and his gender.  Plaintiff claims that Wallace made numerous discriminatory statements towards him including: (1) telling him that she was harder on him because he was "the only black man among three white women;" and (2) derogatory statements regarding his genitals.  (Id., pp. 2; Dkt. 1 at ¶ 46.)  Plaintiff claims that Wallace asked him to complete an assignment describing how he could "use his theology differently," but the Plaintiff's peers were not assigned the same assignment.  (Id., p. 9.)  Plaintiff also claims that Wallace denied his request to take his bible on visits to patients because Wallace thought it might offend some patients. (Dkt. 29, p. 3.)   Plaintiff further claims that over the six weeks of his employment, Wallace garnered the support of his peers and created a hostile work environment for Plaintiff.  (Dkt. 1 at ¶  5.)

Plaintiff alleges that on November 6, 2009, he sent an email to Taylor to complain about Wallace's actions.  (Id. at ¶ 7.)  Plaintiff claims he specifically mentioned in the e-mail the hostile work environment and discriminatory conduct from Wallace.  Plaintiff also requested a meeting with Taylor to discuss his concerns.  (Id.)  Plaintiff

2

claims that on or about November 12, 2009 a Professional Advisory Group ("PAG") panel, including Taylor and Wallace, convened to discuss Plaintiff's concerns. The panel also discussed alleged Reports of Contact filed against Plaintiff by O'Brien and Young complaining about Plaintiff's allegedly threatening and aggressive behavior toward his co-workers. (Id. at ¶¶ 10-22.) The panel further discussed issues raised by Wallace concerning Plaintiff. Following the hearing, Taylor terminated Plaintiff's employment via letter. The letter cited the complaints against Plaintiff in the Reports of Contact filed by O'Brien and Young, as well as Wallace's concerns about Plaintiff's insubordination and refusal to follow directions, as reasons for Plaintiff's termination. (Id. at ¶¶ 26-27.)

Plaintiff, proceeding *pro se*, brought this action against Defendant on February 23, 2011, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964. (Dkt. 1.) Plaintiff alleges he was terminated by Defendant because of his race, gender, religious beliefs, and in retaliation for his e-mail complaint against his supervisor Wallace. Defendant filed the instant motion for summary judgment on October 17, 2012. (Dkt. 28.)

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no

genuine issue of material fact exists.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Evidence is reviewed in the light most favorable to the non-moving party.  Fennell, 559 F.3d at 1216.

A moving party discharges its burden by showing there is an absence of evidence to support the non-moving party's case.  Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  Porter v. Ray, 461 F.3d 1315, 1321 (11th Cir. 2006).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value.")   If material issues of fact exist that would not allow the Court to resolve an issue as a matter of law, the Court must not decide them, but rather, must deny the motion and proceed to trial.

### III.     DISCUSSION

#### A. Title VII

Title VII makes it "unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  Goodwin v. City of Panama City Beach, Fla., 385 Fed. Appx. 966, 969 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-2(a)).  "A plaintiff may establish a claim of illegal disparate treatment through either direct or circumstantial evidence."  Akouri v. Fla. Dep't of Transp., 408

F.3d 1338, 1347 (11th Cir. 2005). "Direct evidence is 'evidence, which if believed, proves existence of fact in issue without inference or presumption.'" Ekokotu v. Boyle, 294 F. Appx 523, 525 (11th Cir. 2008) (citation omitted). Evidence that is subject to more than one interpretation is not direct evidence. Id. (citation omitted). Plaintiff does not contend that direct evidence of discrimination on the basis of race, gender, or religion exists in this case. Rather Plaintiff argues that he has provided enough circumstantial evidence to state a claim for discrimination under Title VII.

Absent direct evidence of discrimination, disparate treatment claims for gender, race, or religious discrimination under Title VII are analyzed under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that analysis, to establish a *prima facie* case of gender, race, or religious discrimination, plaintiff must establish four elements: (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified to do his job; and (4) his employer treated similarly situated employees outside of his class more favorably. See Coar v. Pemco Aeroplex, Inc., 372 Fed. Appx. 1, 3 (11th Cir. 2010) (citing Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004)); Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1236 (11th Cir. 2004); Richardson v. Dougherty Cnty, Ga., 185 Fed. Appx. 785, 789-90 (11th Cir. 2006); see also Goodwin, 385 Fed. Appx. at 968-69. A plaintiff's cause of action fails if any one element is not met. However, if a *prima facie* case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Once the employer satisfies its burden, the burden shifts back to the plaintiff

5

to proffer evidence that the employer's alleged reason is a pretext for illegal discrimination. Id.

Religious discrimination claims can also be brought under a "failure to accommodate" theory. See Richardson, 185 Fed. Appx. at 789; Mousa v. Lauda Air Luftfahrt, A.G., 258 F.Supp.2d 1329, 1343 (S.D.Fla. 2003). In such cases, a *prima facie* case is established if the Plaintiff presents sufficient evidence to prove (1) he had a bona fide religious belief that conflicted with an employment requirement (2) he informed his employer of his belief and (3) he was disciplined for failing to comply with the conflicting employment requirement. See Dixon v. Palm Beach Cnty Parks and Recreation Dept., 343 Fed. Appx. 500, 502 (11th Cir. 2009). With a *prima facie* case established, the burden shifts to the defendant to demonstrate that the Defendant was unable to reasonably accommodate to the employee's religious observance or practice without undue hardship in the conduct of the employer's business. See Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1321 (11th Cir. 2007). A reasonable accommodation is one that eliminates the conflict between employment requirements and religious practices. See Morrissette-Brown, 506 F.3d at 1322 (quotations and citation omitted). An employer is not required to accommodate at all costs, however. Id. (citation and quotations omitted).

In its motion for summary judgment, Defendant concedes, for the sake of argument, that Plaintiff can establish a *prima facie* case of discrimination based on race, gender, and religion. See (Dkt. 28, p. 13) ("for purposes of this motion, the defendant will assume Plaintiff can establish a *prima facie* case of discrimination (although there is serious doubt whether Campbell could even begin to establish a prima facie case of

6

discrimination) and proceed directly to meet its burden by demonstrating the reasons for taking the challenged action.")  Defendant contends that, even so, Plaintiff's claims fail because Defendant had legitimate, non-discriminatory reasons for terminating Plaintiff and Plaintiff could not show that the proffered reasons were pretext.

### 1. Race and Sex Discrimination

Once Plaintiff has established a *prima facie* case of race and sex discrimination the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions.  See Aldridge v. Potter, 2010 WL 1417642 at *6 (M.D.Fla. 2006) (citations omitted).  Once the Defendant has articulated one or more legitimate non-discriminatory reasons for its action, the presumption of discrimination is eliminated and the Plaintiff must put forth evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision but rather merely pretext for illegal discrimination.  See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).  Where the employer articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  See Aldridge, 2010 WL 1417642 at *6 (citing Chapman, 229 F.3d at 1024-25).

In this case, the Defendant provides the following reasons for Plaintiff's termination: (1) Plaintiff engaged in threatening behavior toward others on two separate occasions, within just a few days; (2) Plaintiff was insubordinate and refused to engage in the CPE learning process; and, (3) Plaintiff refused to continue in the CPE program unless he was able to dictate limits on his supervisor's ability to engage him in the process of learning.

Defendant relies on the Report of Contact forms filed by Plaintiff's two co-workers as evidence to support its reasons to terminate Plaintiff. However, the Court cannot consider these documents in ruling on the motion for summary judgment because they have not been properly authenticated. To be admissible in support of, or in opposition to, a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Federal Rule of Civil Procedure 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. See Williams, Jr. v. Eckerd Family Youth Alternative, 908 F.Supp. 908, 911 (M.D.Fla. 1995) ("This Court recognizes that for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by an affidavit that meets the requirements of the summary judgment rule. […] Additionally, the affiant must be the person through whom the exhibits could be admitted into evidence") (citing Burnett v. Stagner Hotel Courts, Inc., 821 F.Supp. 678, 679 (N.D.Ga. 1993)); see also Wells v. XPEDX, 2007 WL 2696566 at *2 (M.D.Fla. 2007) ("to be considered for or against summary judgment, a document must be authenticated, either by an affidavit that meets the requirements of Rule 56(e), Federal Rules of Civil Procedure, or in accord with the Federal Rules of Evidence") (citing Williams, 908 F.Supp. at 911).

In this case, Defendant has not attached a sworn affidavit or deposition testimony to the Report of Contact forms it seeks to introduce. Thus, the Court is precluded from considering these documents in addressing Defendant's motion for summary judgment. See Brown v. Marriott Int'l, Inc., 2006 WL 2189695 at *2 (N.D.Ga. 2006) (failure to attach affidavit or deposition to exhibit to authenticate the document precluded court from considering it at summary judgment. "Absent such sworn testimony, a court

8

deciding a summary judgment motion does not know that a particular piece of evidence is what it purports to be"); Holmes v. City of Atlanta, Georgia, 2010 WL 1328713 at *10 (N.D.Ga. 2010) (court declined to consider documents in ruling on summary judgment motion where documents were not authenticated by any sworn affidavit or deposition testimony).

The Court recognizes that under federal law, the official seal of the Department of Veteran Affairs on a document, along with the signature of one having authority to certify the document, can render the document self-authenticating under Federal Rule of Evidence 902(1). See 38 U.S.C. § 302 (b) ("Copies of any public document, record, or paper belonging to or in the files of the Department, when authenticated by the seal and certified by the Secretary (or by an officer or employee of the Department to whom authority has been delegated in writing by the Secretary), shall be evidence equal with the original thereof.")  However in this case, while the name of the VA Hospital appears on the documents, the official seal of the Department is not on the documents.  Further, there is no evidence that the documents were signed by one having authority to certify the documents.  The documents are signed only by the Plaintiff's co-workers, who filed the complaints against him.  Thus, the Court declines to consider the Report of Contact forms submitted by the Defendant in ruling on the motion for summary judgment.

Defendant also relies on alleged statements by Plaintiff's immediate supervisor, Wallace, to support the reasons for Plaintiff's termination.  However, Defendant cites to no deposition testimony or any sworn affidavits to support the statements made by Wallace.  Defendant repeatedly cites the termination letter sent to Plaintiff, which states that Wallace voiced concerns to Taylor and to the PAG panel that Plaintiff refused, on

9

every occasion, to engage in the CPE process and refused to follow directions specific to his learning. The termination letter submitted by Defendant suffers from the same evidentiary defects as the Report of Contact forms; it has not been authenticated. The termination letter is not attached to any sworn affidavit or deposition testimony and there is no evidence to suggest that it is self-authenticating. Finally, the record contains excerpts of the transcripts of interviews of the parties in this case before the EEO investigator. However, although labeled "affidavits," there is no evidence to suggest that these were sworn affidavits containing testimony given under penalties of perjury. Thus, the Court is also precluded from considering any statements in these documents at this stage.

Therefore, because the Court is precluded from considering the evidence provided by Defendant to support its reasons for Plaintiff's termination, the Court finds Defendant has failed to meet its burden of showing that no genuine issues of material fact exist in this case. Thus, Defendant's Motion for Summary Judgment on Plaintiff's claims for race and sex discrimination is **DENIED**.

### 2. Religious Discrimination

Plaintiff argues that he has established a *prima facie* case for religious discrimination under both a disparate treatment theory and a failure to accommodate theory. Defendant concedes for purposes of this motion that Plaintiff has established a *prima facie* case for religious discrimination under both theories. See (Dkt. 28, p. 13.) Thus, under a disparate treatment analysis, Defendant has failed to meet its burden of showing that no genuine issues of material fact exist because, as described above, the Court is precluded from considering the evidence submitted by Defendant to support its

purported legitimate nondiscriminatory reasons for terminating the Plaintiff. Further, with respect to Plaintiff's failure to accommodate claims, Defendant inexplicably makes no argument in its motion for summary judgment that it was unable to reasonably accommodate Plaintiff's religious observance or practice without undue hardship. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's religious discrimination claims is **DENIED**.

### 3. Retaliation

Plaintiff claims he was terminated in retaliation for sending an e-mail to Taylor complaining about Wallace's discriminatory conduct towards him. For his claim of retaliation, plaintiff must establish (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action and (3) a causal link between the protected activity and the adverse action. See Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1268 (11th Cir. 2010). If the plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate, non-retaliatory reason for its action. See McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008). The Plaintiff must then demonstrate that the defendant's reason is actually a pretext for retaliation. McCann, 526 F.3d at 1375.

Here, Defendant raises no argument that Plaintiff failed to establish a *prima facie* case for retaliation. Rather, Defendant focuses on the reasons provided for Plaintiff's termination as evidence that Plaintiff cannot show pretext. Defendant argues that the Reports of Contact provided sufficient reasons for Plaintiff's termination. Defendant also argues that there is no evidence that Taylor had any discriminatory animus toward Plaintiff or that the PAG meeting was convened in retaliation for Plaintiff sending Taylor

11

an e-mail about Wallace. Defendant further argues that "[m]ost important to the analysis of pretext is the fact that the ultimate decision to terminate Campbell, for all the reasons set forth in the termination letter, was made by a unanimous recommendation of the PAG, after an independent investigation that included testimony from Campbell, Wallace, O'Brien, Young and Morris." (Dkt. 28, pp. 22-23.) As described above, material issues of fact exist concerning the reasons for Plaintiff's termination because the documents submitted by Defendant to support its reasons for Plaintiff's termination are not properly authenticated and cannot be considered by this Court in ruling on the motion for summary judgment. Thus, since Defendant does not dispute that Plaintiff established a *prima facie* case for retaliation, and since Defendant has not met its burden of articulating a legitimate, non-retaliatory reason for its action, Defendant's motion for summary judgment on Plaintiff's retaliation claim is **DENIED**.

## IV.   CONCLUSION

Accordingly, based on consideration of the foregoing, the Defendant's Motion for Final Summary Judgment (Dkt. 28) is **DENIED. Should Defendant wish to cure the technical defects in its motion by filing a renewed and amended motion for summary judgment, it must seek leave to do so and must demonstrate good cause for its failure to file properly in the first instance. Any such leave must be requested within the time required for seeking reconsideration of this Order**.

**DONE** and **ORDERED** in Tampa, Florida, on this 11th day of December 2012.

*signature*

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Any Unrepresented Parties